## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KERRY ROBINSON, on behalf of himself and all others similarly situated, | ) ) ) ) |
| | ) C.A. No. 11-7782 |
| Plaintiff, | ) ) CLASS ACTION |
| v. | ) ) |
| GENERAL INFORMATION SERVICES, INC., | ) ) ) |
| Defendant. | ) ) ) |

## MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

For the reasons set forth in the accompanying Memorandum of Law, Plaintiff Kerry

Robinson hereby seeks final approval of the class action settlement preliminarily approved

by this Court by Order dated July 1, 2014 (Doc. 46).

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

Dated: October 24, 2014          BY:   */s/  James A. Francis*
                                        JAMES A. FRANCIS
                                        JOHN SOUMILAS
                                        DAVID A. SEARLES
                                        LAUREN KW BRENNAN
                                        Land Title Building, 19th Floor
                                        100 South Broad Street
                                        Philadelphia, PA 19110
                                        (215) 735-8600

                                        *Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **KERRY ROBINSON, on behalf of himself and all others similarly situated,** | ) ) ) ) | **C.A. No. 11-7782** |
| **Plaintiff,** | ) ) | **CLASS ACTION** |
| **v.** | ) ) | |
| **GENERAL INFORMATION SERVICES, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR FINAL**
**<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...............................................................................1

II.    NATURE AND HISTORY OF THE LITIGATION..............................2

    A.   Procedural History ...............................................................3

    B.   Motion Practice ...................................................................3

    C.   Written Discovery and Depositions ...................................3

    D.   Settlement Negotiations and Mediation ............................4

III.   SUMMARY OF THE SETTLEMENT ...............................................4

    A.   The Settlement Classes .......................................................4

    B.   Settlement Benefits .............................................................5

         1.   Monetary Compensation ..........................................5
         2.   Costs of Notice .........................................................6
         3.   Service Award for Class Representative....................6
         4.   Attorneys' Fees and Costs ........................................7
         5.   Class Notice .............................................................7

IV.    ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS .................8

    A.   Numerosity..........................................................................9

    B.   Commonality.......................................................................9

    C.   Typicality ..........................................................................10

    D.   Adequacy of Representation .............................................11

    E.   Rule 23(b)(3) Considerations............................................11

V.     THE PROPOSED SETTLEMENT IS FAIR, REASONABLE
      AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT ..........13

    A.   The Complexity, Expense And Likely Duration Of The Litigation .............15

    B.   The Reaction Of The Class To The Settlement ...........................16

    C.   The Stage Of The Proceedings And The Amount Of Discovery
        Completed ..........................................................................16

    D.   The Risks Of Establishing Liability.........................................17

E.    The Risks Of Establishing Damages.............................................17

F.    The Risks Of Maintaining The Class Action Through Trial ......................18

G.    The Ability Of The Defendant To Withstand A Greater Judgment..............19

H.    The Range Of Reasonableness Of The Settlement In Light of
      The Best Possible Recovery..........................................................19

I.    The Range Of Reasonableness Of The Settlement To A Possible
      Recovery In Light Of All The Attendant Risks Of Litigation .....................21

VI.   INDIVIDUAL SETTLEMENT AND SERVICE AWARD.................................21

VII.  CONCLUSION .................................................................................22

I.      **INTRODUCTION**

Plaintiff Kerry Robinson ("Representative Plaintiff"), by the undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion for Final Approval of the proposed settlement of his claims brought under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. ("FCRA") against Defendant General Information Services, Inc. ("GIS"), a national consumer reporting agency ("CRA").  The terms of the settlement are set forth in the Settlement Agreement submitted on June 13, 2014 (Doc. 44-2).[1]  As discussed herein, the proposed settlement provides comprehensive equitable and compensatory relief for the Settlement Classes and meets all of the standards for settlement approval under Rule 23(e).  It should, therefore, be granted final approval as fair, reasonable and adequate as to all Class members.

The settlement represents an excellent resolution for numerous reasons.  First, in a consumer class action brought under the FCRA, which is remedial in nature, the settlement assures practice changes by Defendant GIS that will benefit consumers in the future.  Specifically, if approved, the settlement will assure revisions to the policies and procedures utilized by GIS in providing background reports on job applicants to employers and in disclosing the existence of these reports to job applicants.  *See Seamans v. Temple University*, 744 F.3d 853 (3d Cir. 2014) (discussing the FCRA's policy objectives); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3rd Cir. 2010) (same).

Second, the settlement provides material benefits to the Settlement Class Members through the payment of compensatory damages in the approximate amount of $649,000.

---

[1]      Plaintiff has simultaneously moved for an award of attorney's fees and costs pursuant to the Settlement Agreement.

The value of this aspect of the settlement is underscored by the fact that members of both the 1681e and 1681k classes will recover these benefits without the necessity of filing a claim, and members of the 1681k class will receive these benefits without forfeiting or releasing any claims for actual damages that they may have against GIS arising from inaccuracies on their GIS reports or from reinvestigation claims they may have against Defendant.

Third, the stage of the proceedings demonstrates the fairness and non-collusive nature of the settlement.  It was only reached after over two years of litigation and a detailed mediation under the auspices of the Hon. Diane M. Welsh (ret.) of JAMS.  There can be no question that negotiations were conducted in an arms-length manner.

For these reasons, and those set forth in greater detail below, the settlement is fair, reasonable and adequate to the Settlement Class and satisfies all of the criteria that courts routinely apply for the approval of class action settlements.  *See, e.g., In Re Prudential Ins. Co. of Am. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

## II.   <u>NATURE AND HISTORY OF THE LITIGATION</u>

This is a consumer class action brought under the Fair Credit Reporting Act against Defendant GIS, a consumer reporting agency.  The Complaint's primary allegations are that Defendant willfully violated the FCRA through its practice of reporting expunged criminal records and by failing to notify consumers that it was sending criminal record information to employers at the time that it did so.  Plaintiff contends that there is clear prejudice caused to consumers by the erroneous reporting of expunged criminal records, and failure to provide contemporaneous notice to consumers which would allow them to

adequately verify and/or dispute the accuracy of information contained on reports. Defendant denies that it violated the FCRA.

### A.     <u>Procedural History</u>

Mr. Robinson filed this action in the United States District Court for the Eastern District of Pennsylvania, captioned *Robinson v. General Information Services, Inc.*, C.A. No. 11-7782, on December 22, 2011.  Doc. 1.  An Amended Class Action Complaint was filed May 31, 2012.  Doc. 14.

### B.     <u>Motion Practice</u>

Defendant moved to partially dismiss the initial Complaint, and simultaneously moved to stay consideration of the motion pending resolution of GIS's motion for judgment on the pleadings contesting the constitutionality of the FCRA in *Shamara T. King v. General Information Servs., Inc.*, C.A. No. 2:10-cv-06850-PBT.  Docs. 6, 7.  The Court approved the motion to stay on September 13, 2012.  Doc. 24.

On November 6, 2012, the motion for judgment on the pleadings in the *King* matter was denied.  *King v. General Info. Servs., Inc.*, 903 F.Supp.2d 303, 307 (E.D. Pa. 2012). The Court lifted the stay in this case on November 9, 2012.  Doc. 26.  Defendant's partial motion to dismiss was denied as moot on December 3, 2012.  Doc. 27.

Plaintiff moved for the appointment of interim class counsel on January 11, 2013. The Court granted the motion and appointed Francis & Mailman, P.C. as class counsel. Docs. 31, 34.

### C.     <u>Written Discovery and Depositions</u>

The parties embarked upon discovery, including document production.   The Defendant took Plaintiff's deposition on June 7, 2013.

### D.   **Settlement Negotiations and Mediation**

On October 7, 2013, the parties agreed to stay all deadlines in the case to pursue private mediation.  On March 3, 2014, the parties conducted an arms-length, contentious, lengthy, and complicated in-person mediation session at the office of JAMS Philadelphia with the Honorable Judge Diane Welsh (Ret.).  The parties were able to arrive at a proposed settlement which they believe is fair, reasonable and adequate – and which avoids the ongoing expense and uncertainties of further litigation, trial and possible appeal.  *See* Settlement Agreement attached as Appendix I to Plaintiff's Motion for Preliminary Approval of Class Action Settlement.  Doc. 44-2.  It took the parties several more months to negotiate the terms of the proposed notice to the class and preliminary and final proposed orders, and to reduce all of the terms of the settlement to writing.

### III.   **SUMMARY OF THE SETTLEMENT**

The parties have agreed, subject to this Court's approval, to a settlement of this litigation on a class-wide basis.  The terms of the settlement are set out in the Settlement Agreement filed on June 13, 2014.  Doc. 44-2.  The settlement is fair, reasonable and sound in light of the relevant facts, the applicable law, and the economic, as well as non-economic, value of the settlement to the class.

### A.   **The Settlement Classes**

There are two settlement classes covered by the settlement, defined as follows.  The 1681e Class is defined as:

> All natural persons residing in the United States who were the subjects of any consumer report that GIS issued to an end-user for employment purposes between December 22, 2009 and March 1, 2014 and that included expunged criminal charges.

Doc. 44-2, App. I, Art. 2, ¶ (a).

The 1681k Class is defined as:

> All natural persons residing in the United States who were the subjects of any GIS consumer report that GIS issued to an end-user for employment purposes between December 22, 2009 and March 1, 2014 and to whom GIS mailed notice under 15 U.S.C. § 1681k(a)(1), and for whom either (1) GIS did not place the notice to the consumer into the United States mail on the same business day that GIS provided the report to the employment-purposes end-user or (2) GIS is uncertain whether it placed the notice to the consumer into the United States mail on the same business day that GIS provided the report to the employment-purpose end-user.

*Id*. at App. I, Art 2 ¶ (b).  Excluded from both Settlement Classes are any Released Party, any consumer who has previously released his or her claims against GIS, or the Judge overseeing the litigation.  *Id*.

### B.   Settlement Benefits

#### 1.   Monetary Compensation

The Settlement Agreement provides for the class members to receive cash payments from a fund established by GIS in the total amount of $969,000.  *Id*. at App. I, Art. 9.  After deduction for an individual settlement and service award to the Representative Plaintiff and the Court's award of attorneys' fees and costs, $441,000 of the settlement fund shall be dedicated to the 1681e Class, with each class member directly receiving a *pro rata* share.  *Id*. at section 9.5.1.  It is anticipated that each of member of the 1681e Class whose Mail Notice was not returned as undeliverable will receive a check in the amount of at least $1,600.[2]  No claim need be filed by any 1681e Class member.

To the extent that settlement checks sent to 1681e Class members are not negotiated within 90 days from issuance, such funds will be combined with the remaining amount in

---

[2]   Based upon the information currently available from the Settlement Administrator regarding the number of Mail Notices returned undeliverable, Class Counsel estimates that each member of the 1681e(b) class will receive between $1600 and $1925.

the settlement fund, and the net remainder will be distributed on a *pro rata* basis directly to the 1681k Class members. *Id*. at App. I, sections 9.5.2, 9.7, 9.8.  It is anticipated that distribution will result in a check in the amount of at least $49 to each of the members of the 1681k Class whose Mail Notice was not returned as undeliverable.  No claim need be filed by a member.  To the extent settlement checks sent to the 1681k Class are not negotiated within 90 days from issuance, such funds will be distributed to the San Jose State University Record Clearance Project, Margaret Stevenson, Project Director (www.sjsu.edu/justicestudies/programs-events/rcp/index.html).  No funds will revert to Defendant.  *Id*. at App. I, subsection 9.9.

Accordingly, the instant settlement is qualified for preliminary approval since it confers a substantial benefit on the Class members.

### 2.    Costs of Notice

Defendant will pay all costs of notice relating to the settlement and all necessary and reasonable costs of administering the disbursement of consideration, and other administrative expenses including, but not limited to, postage charges, printing costs, a telephone assistance program, and all other notice costs and other charges as may be approved by the parties subject to further approval by the Court.  *Id*. at App. I, subsection 5.4.2.

### 3.    Service Award for Class Representative

Subject to court approval, the parties have agreed that the Representative Plaintiff will be paid the sum of $10,000 by the Defendant, and to which the Defendant will not object, for his individual settlement award and his services in connection with representing the Class.  *Id*. at App. I, section 9.4.

4. __Attorney's Fees and Costs__

Subject to court approval, GIS has agreed to pay, and agrees not to object or engender objection to, up to 33% of the Settlement Fund for the combined attorney's fees and costs incurred by Class Counsel in the prosecution of the litigation.  *Id*. at App. I, section 9.3.   Plaintiff has contemporaneously filed his Motion for Attorneys' Fees and Reimbursement of Expenses detailing the fees and costs in this matter.

5. __Class Notice__

The settlement provides for GIS to perform some settlement administration responsibilities, and to hire a Settlement Administrator, The Garden City Group ("GCG"), to perform others.  *Id*. at App. I., Section 4.2.

Pursuant to that division of labor, GIS mailed notice to 293 members of the 1681e Class and to 5,064 members of the 1681k Class.   Undeliverables totaled 1,093.   *See* Declaration of Jamie Pelchat, Doc. 47-1.

GCG established and maintained a website dedicated to the Settlement (www.GISRobinsonSettlement.com) to assist Settlement Class Members.  The website listed the exclusion and objection deadlines, as well as the date, time and location of the Court's Final Fairness Hearing.  Copies of the Long-Form Notices, the Settlement Agreement, and the Preliminary Approval Order were posted on the website so that they could be downloaded by Settlement Class members.  The Settlement Website also included contact information for Settlement Class Counsel and the Settlement Administrator.  The Settlement Website went live on July 15, 2014, and is accessible 24 hours a day, 7 days a week.  As of the date of GCG's Declaration, the Settlement Website had received 3,281

visits.  *See* Declaration of Jennifer M. Keough Regarding Administration, Doc. 47-2 at ¶ 4.

GCG also established toll-free telephone numbers, in English and in Spanish, where callers are able to obtain information about the settlement.  The toll-free telephone numbers were made available on July 15, 2014, and continue to be accessible 24 hours a day, 7 days a week.  Class members who call the toll-free telephone numbers have the option of speaking with a live representative during the hours of 8:00 am through 6:00 pm Eastern Time.  During non-business hours, Class members can leave a voice message requesting a return call from a call center representative.  As of the date of Ms. Keough's Declaration, the English toll-free telephone number had received 550 calls and the Spanish toll-free telephone number had received 70 calls.  *Id*. at ¶ 5.

GCG has also reported that, to date, GCG has received two (2) requests for exclusions from the settlement.  *Id*. at ¶ 6.  A list of the exclusion requests will be filed under seal, and is attached to the proposed Final Order as Exhibit A.

## IV.  ELEMENTS FOR CERTIFICATION OF A SETTLEMENT CLASS

When the Court preliminarily approved this settlement, it considered whether the settlement class could be conditionally certified for settlement purposes.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).  As final approval of the settlement also involves the determination that certification of the Settlement Class is appropriate, the analysis applies again at this juncture.

Rule 23 of the Federal Rules of Civil Procedure governs the certification of class actions.  One or more members of a class may sue as representative parties on behalf of a class if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  In support of his contention that proper and sufficient grounds for class certification exist under Rule 23, Plaintiff would show the following:

### A.    Numerosity

Plaintiff asserts that the members of the Settlement Class are so numerous that joinder of all members is impracticable.  According to records maintained by Defendant, it appears that the 1681e Class consists of 293 members and the 1681k Class consists of approximately 5,064 members.  *See* Doc. 47-1.  These numbers are such that joinder of all members is not practicable.

### B.    Commonality

Plaintiff also asserts that there are questions of law or fact common to the Class. The principal question is whether Defendant willfully violated the FCRA with its practice of reporting expunged criminal records and by failing to notify consumers that it was sending criminal record information to employers at the time that it did so.  Representative Plaintiff contends that such information should be excluded from consumer reports; GIS denies that its practice violated the law.

Cases presenting standardized consumer reporting practices invariably present common predominating issues.  As Judge Brody held in a similar case, "the factual and

legal basis of the claim is common to all Plaintiffs; Plaintiffs allege that the standard reinvestigation letter that Equifax sent to prospective class members in response to a dispute over public record information contains misstatements and misrepresentations in violation of the FCRA. Thus, Rule 23(a)(2) is satisfied." *Chakejian v. Equifax Information Services, LLC,* 275 F.R.D. 201, 209 (E.D. Pa. 2011).

Where, as here, a defendant engaged in standardized conduct toward putative class members, commonality is satisfied. *In re Prudential*, 148 F.3d at 310.

**C.   Typicality**

This requirement is "designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *In re Prudential*, 148 F.3d at 311.   The threshold for establishing typicality is low.   Typicality does not require that the claims of the class members be identical. *Eisenberg v. Gagnon*, 766 F.2d at 786.   Rather, a plaintiff's claims are typical when the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his personal claims he can reasonably be expected to advance the interests of absent class members.   *See, e.g., General Telephone Co. of the Southwest v. Falcon*, 457 U.S. 147, 156-157 (1982); *see also* H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS (4th ed. 2002) at § 3.13.

In this case, each Settlement Class member was the subject of a background consumer report that contained expunged or sealed criminal records.   The claims of Mr. Robinson and each of the Settlement Class members arise from the same course of conduct, and are based on the same theory of liability.   *See ,* 256 F.R.D.at 498.   In other words, the Representative Plaintiff's claims are typical and aligned with the interests of the rest of the

Settlement Class.

**D.     Adequacy of Representation**

A representative plaintiff must be able to provide fair and adequate protection for the interests of the class.  That protection involves two factors: (a) the representative plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the representative plaintiff must not have interests antagonistic to those of the class.  *See, e.g., In re Prudential*, 148 F.3d at 312; *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

Mr. Robinson, the Representative Plaintiff, fairly and adequately represents the interests of the Settlement Class.  Plaintiff's attorneys have substantial experience in class action and consumer litigation and are qualified to conduct the litigation.[3]  Further, the Representative Plaintiff has no interests antagonistic to the Settlement Classes and is a suitable and adequate class representative.

**E.     Rule 23(b)(3) Considerations**

The proposed settlement contemplates a class certification permitting opt-outs pursuant to Rule 23(b)(3).  An action may be maintained as a class action if the four

---

[3]     *See, e.g., Berry v. LexisNexis Risk & Information Analytics Group, Inc.*, 2014 WL 4403524, at *11 (E.D. Va. Sept. 5, 2014) (overruling objection to adequacy of class counsel); *White v. Experian Information Solutions,* 2014 WL 304270, *16 (C.D. Cal. Jan. 21, 2014) (appointing Francis & Mailman as interim class counsel in contested proceeding); *Sapp v. Experian Information Solutions*, 2013 WL 2130956 (E.D. Pa. May 15, 2013); *LaRocque v. TRS Recovery Services, Inc.,* 285 F.R.D. 139 (D. Me. 2012) (certifying firm of Francis & Mailman as class counsel in consumer class action); *accord*, *Serrano v. Sterling Testing Systems, Inc.,* 711 F. Supp. 2d 402, 412 (E.D. Pa. 2010); *Summerfield v. Equifax Information Services, LCC*, 264 F.R.D. 133 (D. N.J. 2009); *Chakejian v. Equifax Information Services, LLC*, 256 F.R.D. 492 (E.D. Pa. 2009); *Jones v. Midland Funding, LLC,* C.A. No. 3:08cv802 (RNC) (D. Conn. October 13, 2009); *Jordan v. Commonwealth Financial Systems, Inc.,* 237 F.R.D. 132 (E.D. Pa. 2006); *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, at *3 (E.D. Pa. 2003).

elements described above are satisfied, and in addition, certain other conditions under Rule 23(b)(3) are met:

> (3)    the Court finds that the questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a Class action is superior to other available methods for the fair and efficient adjudication of the controversy.

Fed. R. Civ. P. 23(b)(3).

The requirement that the questions of law or fact common to all members of the Class predominate over questions pertaining to individual members is normally satisfied where plaintiffs have alleged a common course of conduct on the part of the defendant. *In re Prudential*, 148 F.3d at 314-315.

Plaintiff has alleged such a common course of conduct by Defendant.  Class members were all subjected to the same alleged violative practice.  The predominating and dispositive issue is whether Defendant violated the FCRA by engaging in this practice.

A class action in this case is superior to other available methods for the fair and efficient adjudication of the controversy because a class resolution of the issues described above outweighs the difficulties in management of separate and individual claims and allows access to the courts for those who might not gain such access standing alone, particularly in light of the relatively small amount of the actual and statutory damage claims that would be available to individuals.  In numerous cases, courts have recognized that Rule 23(b)(3) certification is particularly appropriate for consumer claims such as those asserted here. *See*, *e.g., Amchem*, 521 U.S. at 617 ("The policy of the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights").

Moreover, such a certification permits individual claimants to opt-out and pursue their own actions separately if they believe they can recover more in an individual suit.

Thus, both predominance and superiority are satisfied.

Solely for the purposes of settlement, Defendant does not dispute that the Classes should be certified in accordance with Rule 23(b)(3). Accordingly, the Court should certify the Classes for settlement purposes.

## V.   THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

When a proposed class-wide settlement is reached, it must be submitted to the court for approval.  NEWBERG at § 11.24.  Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action.  The second step is the dissemination of notice of the settlement to all class members.  The third step is a settlement approval hearing.  *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.63 (2004), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/mcl4.pdf/$file/mcl4.pdf.  The first two steps have been completed.

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation;(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation…

*Girsh*, 521 F.2d at 157; *In re Prudential*, 148 F.3d at 317; *In re Rite Aid Corporation Securities Litigation*, 269 F.Supp.2d 603, 607 (E.D. Pa. 2003), 362 F. Supp.2d 587 (E.D. Pa. 2005) (on remand).

Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement. *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *Girsh v. Jepson, supra*.

Thus, this Court is now asked to ascertain whether the proposed settlement is within a "range of reasonableness" which experienced attorneys could accept in light of the relevant risks of the litigation. *See Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983). In determining what falls within this range, the Court should bear in mind "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving the issues intentionally left unresolved. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974); *see also Officers for Justice v. Civil Service Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1975). A settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution. Courts, therefore, have given considerable weight to the views of experienced counsel as to the merits of a settlement. *See Lake v. First*

14

*Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class").

Here, experienced counsel firmly believes that the settlement, as structured and contemplated by the parties, represents an educated and eminently reasonable resolution of the dispute.  An evaluation of the relevant factors demonstrates that the settlement fits well within the range of reasonableness and should be approved.

### A.    The Complexity, Expense And Likely Duration Of The Litigation

Absent the settlement, the Court would be required to rule on the many issues likely to be raised in the parties briefing on class certification and summary judgment.  While the Representative Plaintiff believes he would prevail on all issues, there is at least some risk he would not.

Even if Plaintiff was able to prevail on class certification and successfully defeat the expected motion for summary judgment, a lengthy and expensive trial would most likely ensue.  Trial preparation on both sides would be necessary and a jury trial would eventually be before the Court.  Such a trial would likely present challenges for Plaintiff. To recover on the claim for statutory damages, Plaintiff would have to prove willfulness at trial, a high hurdle to clear. *See Reibstein v. Rite Aid Corp.,* 761 F.Supp.2d 241, 251–52 (E.D. Pa. 2011), citing *Safeco Ins. Co. v. Burr,* 551 U.S. 47, 56–57 (2007); *see also Sapp v. Experian Information Solutions, Inc.,* 2013 WL 2130956, at * 2 (E.D. Pa. May 15, 2013) (noting potential of successful willfulness defense).  It would be unrealistic not to expect appeals from any result reached.  Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties.  *See In re General Motors Pick-Up Trust Fuel Tank*

*Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

**B.      The Reaction Of The Class To The Settlement**

As set forth above, notice has been directly mailed to members of the Settlement Class advising them of the terms of the settlement and their right to exclude themselves from the Class.  The deadline for Class members to exclude themselves and to object was September 4, 2014.  Keough Dec., Doc. 47-2 at ¶ 6.  As of this date, only 2 Settlement Class members timely exercised the right to opt out.  *Id.*   No objections have been received. This is convincing evidence of the proposed settlement's fairness and adequacy.  *See In re Rite Aid Securities Litig*., 396 F.3d 294, 305 (3d Cir. 2005) (agreeing with district court that two objections out of 300,000 class members was a "rare phenomenon"); *In re Prudential*, 148 F.3d at 318 (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected).

**C.      The Stage Of The Proceedings And The Amount Of Discovery Completed**

This action did not involve much motion practice, since it was stayed during similar litigation in the *King* case, but there was document and deposition discovery.  Mr. Robinson's deposition was taken by GIS on June 7, 2013.

Thus, when the parties agreed to embark upon mediation, they had sufficient information to informatively participate in that proceeding.  The settlement negotiations were adversarial and somewhat protracted, but eventually the parties were able to reach an agreement in principle to settle.  After hashing out the details of the Settlement Agreement

and the collateral settlement documents, the parties formally sought preliminary approval of a settlement about two years after the case was filed.

Thus, the final settlement occurred only after the parties were able to assess its fairness adequately.  As a result of the parties' efforts, the litigation had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, at *6 (E.D. Pa. 2003), quoting *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

### D.     The Risks Of Establishing Liability

The risk of establishing liability is another important factor warranting final approval of the settlement.  To prevail at trial, Plaintiff would need to succeed on his claims that the Defendant's actions violated the FCRA.  Defendant denies that it has committed any wrongful acts or violations of law or that it has any liability to the Plaintiffs or the Settlement Classes.

While Plaintiff strongly believes that the Defendant's activity violated the law as set forth in his Amended Complaint, he also recognizes the risk that the Court or a jury might not make that finding.  Although Plaintiff was prepared to take on these burdens, the risks he faced were not insignificant.

### E.     The Risks Of Establishing Damages

Even if Plaintiff were to overcome the liability obstacles, there are also risks in obtaining statutory damages, which Plaintiff has avoided by virtue of the proposed settlement.  The determination of statutory damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting opinions.  In this case,

Plaintiff and the members of the Settlement Class were seeking statutory damages under the FCRA in the range of $100 to $1,000 per class member, as well as punitive damges. 15 U.S.C. § 1681n.

The value of the recovery to the Settlement Class is $969,000 in total class recovery.  The net amount available for distribution to the 1681e Class members is at least $1,600 per member, well above the statutory damages maximum.  The net amount available for the 1681k Class members is anticipated to be at least $49 each.  While this latter amount is not more than the low end of the damages range, it must be remembered that the settlement as a whole will result in substantial practice changes that will benefit all Settlement Class members, as well as others in the future.  Also, even if GIS were to be found liable for willful conduct, and Plaintiff was awarded statutory damages, that award amount is by no means certain, given the statutory factors that have to be taken into account in making such an award – frequency and persistence of noncompliance with the statute, nature of the noncompliance, and extent to which noncompliance was willful or negligent. 15 U.S.C. § 1681n(a) and § 1681o(a).

Thus, this settlement avoids the litigation risk to the Settlement Classes and secures tangible and useful relief that may not be obtainable after trial. The risk of no or a lower damages award at trial, as well as limitations on the Court's ability to award injunctive relief under the FCRA, supports final approval of the Settlement Agreement.

**F.**     **The Risks Of Maintaining The Class Action Through Trial**

The settlement here comes before Plaintiff has moved for class certification. Defendant would be expected to vigorously oppose certification, and even if class

18

certification were granted, it would not be surprising if Defendant pursued an interlocutory appeal under Rule 23(f).

Alternatively, even if the case were certified, it is likely that Defendant would seek decertification, either before trial, during trial or on appeal.  *See Saunders v. Berks Credit and Collections*, 2002 WL 1497374, at *12 (E.D. Pa. July 11, 2002).  While the success of such attempts is uncertain at best, the settlement allows Plaintiff to avoid the delay and expense that would be associated with such proceedings.

###### G.  The Ability Of The Defendant To Withstand A Greater Judgment

The ability of a defendant to withstand a greater judgment is a particularly relevant consideration "where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement." *Reibstein,* 761 F. Supp. 2d at 254.  Here, this factor is neutral.

###### H.  The Range Of Reasonableness Of The Settlement In Light Of The Best Possible Recovery

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief.  The expense of a trial and the use of judicial resources and the resources of the parties would have been substantial.  Moreover, in light of the contested liability, it would not be unusual that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery.  Thus, a settlement is advantageous to all concerned.  An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself.  *See Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a jury verdict and a motion for judgment N.O.V. was denied, but on appeal the judgment was reversed and the case dismissed); *Berkey Photo,*

*Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd* 409 U.S. 363, 366 (1973) ($145 million judgment overturned after years of litigation and appeals).

While Plaintiff is confident of his ability to prevail at trial, no final adjudication has been made as to the validity of his claims.  Plaintiff also recognizes that Defendant has continued to deny all liability and allegations of wrongdoing and that Plaintiff's claims would be threatened with dismissal in connection with dispositive motions which would be expected to be filed and briefed.  In *In re Greenwich Pharmaceutical Securities Litigation*, 1995 WL 251293 (E.D. Pa. April 26, 1995), the court held in finding a $4.3 million settlement within the range of reasonableness where plaintiff's estimate of damages was $100 million:

> [P]laintiffs' most optimal estimate must be tempered by Defendants' repeated and vigorous claim of no damages.  When the probability of success at trial is factored into the equation, the settlement is obviously "within the range of reasonableness."

*Id.* at \*5.  *See also, In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approval of settlement that provided 5.2% of best possible recovery).

Through the proposed settlement, Plaintiff has obtained a very reasonable benefit for the Settlement Classes under the FCRA.  Moreover, through the practice changes that the lawsuit triggered, Plaintiff has achieved what essentially acts as a settlement injunction prohibiting the Defendant from disclosing the same expunged records in the future.  This settlement allows Plaintiff to avoid the risks described above and ensures an immediate benefit to the Settlement Classes.  Plaintiff believes the proposed settlement is well within the range of reasonableness and should be approved.

I.     **The Range Of Reasonableness Of The Settlement To A Possible Recovery In Light Of All The Attendant Risks Of Litigation**

Essentially, this factor is an amalgam of the analysis described above. When the risks of liability and damages are considered in light of the total potential recovery, this settlement is an excellent result for the Settlement Class.

VI.   **INDIVIDUAL SETTLEMENT AND SERVICE AWARD**

Class Counsel also seeks this Court's approval of a ten thousand dollar ($10,000.00) individual settlement and service award for Kerry Robinson, for his willingness to undertake the risks of this litigation and shoulder the burden of such litigation. In this case, there would be no benefit to Class members if the Representative Plaintiff had not stepped forward. Mr. King devoted significant time and energy to the litigation, including reviewing documents, sitting for a deposition and consulting with counsel as necessary. He has totally fulfilled his obligations as a class representative. Class Counsel therefore request that the Mr. Robinson be approved for the award described above and as set forth in the Settlement Agreement. The award represents actual and statutory damages under the FCRA, as well as recognition of the benefits and value of the settlement that the Representative Plaintiff achieved for the two Settlement Classes. Class members were notified that Class Counsel would request awards for the Representative Plaintiff in this amount and no Class member objected.

This award is well within the range of awards made in similar cases. *See Berry*, 2014 WL 4403524, at *16 (awarding $5,000 to each of several class representatives); *Sapp*, 2013 WL 2130956, at * 3 (awarding $15,000 to class representative in FCRA settlement); *McGee*, 2009 WL 539893, at *18 ($3,500); *Barel v. Bank of America*, 255 F.R.D. at 402-403 ($10,000); *Perry v. Fleet Boston Financial, Corp*., 229 F.R.D. 105, 118 (E.D. Pa.

2005) (awarding $5,000, and citing cases); *Roberts v. Texaco, Inc.,* 979 F. Supp. 185, 188 (S.D.N.Y. 1997) (awarding $25,000 to $85,000 incentive awards).   Accordingly, the awards requested for the Class Representatives should be approved.

**VII.**   <u>**CONCLUSION**</u>

As concluded by Judge Brody in approving a settlement of FCRA claims in the *Chakejian* case, "this settlement is fair, adequate, and reasonable. Such a finding is further bolstered by previous court decisions approving similar settlements whose terms were somewhat less favorable than these."  *Chakejian*, 275 F.R.D. at 216 (citations omitted). *See also Sapp*, 2013 WL 2130956, at *2 ("There is no question but that the settlement was a result of hard-fought, arm's-length negotiation…. In sum, the settlement is unquestionably fair, adequate and reasonable").

The Representative Plaintiff requests final approval of the proposed settlement herein for the same reasons.

Respectfully submitted,

**FRANCIS & MAILMAN, P.C.**

Dated:  October 24, 2014          BY:    /s/ James A. Francis
                                        JAMES A. FRANCIS
                                        JOHN SOUMILAS
                                        DAVID A. SEARLES
                                        LAUREN KW BRENNAN
                                        Land Title Building, 19th Floor
                                        100 South Broad Street
                                        Philadelphia, PA 19110
                                        (215) 735-8600

                                        *Attorneys for Plaintiff and the Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this date, I caused a true and correct copy of the foregoing

to be served via the Court's ECF Notification system upon all counsel of record.


Dated:  October 24, 2014                     */s/ James A. Francis*
                                                      JAMES A. FRANCIS